# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| EUGENE HUNTER, | |
| Plaintiff, | |
| v. | Civil Action No. 08-303 (CKK) |
| DISTRICT OF COLUMBIA, *et al.*, | |
| Defendants. | |

## MEMORANDUM OPINION
(November 15, 2011)

Plaintiff Eugene Hunter filed suit against the District of Columbia and Metropolitan Police Department Officer Krister Suter, asserting claims under 42 U.S.C. § 1983 (Count I), 42 U.S.C. §§ 1981, 1985, and 1986 (Count II), and common law claims for false arrest and false imprisonment (Count III), assault and battery (Count IV), negligent infliction of emotional distress (Count V), intentional infliction of emotional distress (Count VI), negligent supervision and *repondeat superior* (Count VII), equitable relief (Count VIII), and negligence (Count IX). Am. Compl. ¶¶ 46-104. Presently before the Court is Defendants' [61] Motion for Partial Summary Judgment and/or Motion to Dismiss Counts I, II, III (as to Officer Suter only), IV (as to Officer Suter only), V, VI, VII (negligent supervision only), VIII, and IX. Defendants do not move to dismiss Counts III and IV as to the District of Columbia, or Count VII to the extent it asserts a claim for *respondeat superior*. Also pending before the Court is Plaintiff's [68] Motion to Strike Notice of Supplemental Authority. Upon review of the parties' submissions, the

relevant legal authorities, and the record as a whole,[1] the Court shall grant Defendants' motion

for summary judgment as to Counts I, II, III (as to Officer Suter only), IV (as to Officer Suter

only), V, VI, VII (negligent supervision only), and IX.  The Court shall also dismiss Count VIII

for lack of subject matter jurisdiction.  The Court will deny Plaintiff's motion to strike.

## I. BACKGROUND

Plaintiff was arrested on February 27, 2007 around 9:00 PM, and charged with

possession of an open container of alcohol.  Def.'s Stmt. ¶¶ 1-2.[2]  Plaintiff alleges he was sitting

in his parked car near his residence when several Metropolitan Police Department ("MPD")

officers approached the vehicle, asked how Plaintiff was doing, and began to search the vehicle.

Am. Compl. ¶¶ 7-13.  The MPD officers were later identified as Officers Joseph Chaplin, Frank

Bauserman, Jeffrey Leslie, and Krister Suter.  Def.'s Stmt. ¶ 3.  One of the officers asked

Plaintiff to step out of the vehicle, placed him in handcuffs, and moved him to the rear of the

---

[1] While the Court's decision today is based on the record as a whole, its consideration has focused on the following documents, listed in chronological order of their filing: Def.'s Mot. for Partial Summ. J., ("Def.'s Mem.") ECF No. [61], Pl.'s Opp'n to Def.'s Mot. for Partial Summ. J. ("Pl.'s Opp'n") ECF No. [64]; Def.'s Reply to Pl.'s Opp'n to Mot. for Partial Summ. J. ("Def.'s Reply") ECF No. [66]; Pl.'s Mot. to Strike Notice of Supplemental Authority ECF No. [68]; and Def.'s Opp'n to Mot. to Strike [69].

[2] The Court strictly adheres to the text of Local Civil Rule 7(h) (formerly Rule 56.1) when resolving motions for summary judgment.  *See Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002) (finding that district courts must invoke the local rule before applying it to the case). The Court has advised the parties that it strictly adheres to Rule 7(h) and has stated that it "assumes facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  [24] Scheduling and Procedures Order at 5 (Jan. 8, 2010).  Thus, in most instances the Court shall cite only to one party's Statement of Material Facts ("Stmt.") unless a statement is contradicted by the opposing party, in which case the Court may cite a party's Response to the Statement of Material Facts ("Resp. Stmt.").  The Court shall also cite directly to evidence in the record, where appropriate.

vehicle.  Am. Compl. ¶¶ 14-15.  While some of the officers continued to search Plaintiff's

vehicle, Plaintiff was allegedly pushed to the ground and forced to lie handcuffed, face down,

while an officer knelt on Plaintiff's back.  *Id.* at ¶¶ 17, 20-22.  At some point, Plaintiff's

girlfriend exited their residence and asked the Officers why Plaintiff was on the ground.  *Id.* at ¶¶

23-24.  When Plaintiff tried to tell his girlfriend to go back inside their residence, the officer

holding Plaintiff to the ground purportedly grabbed and twisted Plaintiff's leg, before hitting it

with a baton, allegedly breaking Plaintiff's leg.  *Id.* at ¶¶ 24-27.  While the parties dispute which

officer initially handcuffed Plaintiff, the parties agree Officer Suter did not push Plaintiff to the

ground or twist and strike Plaintiff's leg.  Def.'s Stmt. ¶ 8.  Plaintiff was later transported to the

police station, where Plaintiff allegedly requested but did not receive medical care for his leg.

Am. Compl. ¶¶ 34, 37.  Plaintiff signed a "Collateral/Bond Receipt," which informed Plaintiff he

was "agreeing to waive [his] right to a hearing in court, and the case against [him] will be

concluded without an admission of guilt."  Pl.'s Ex. 11 (2/22/2007 Collateral/Bond Receipt).

Plaintiff paid the $25.00 collateral required by this "post and forfeit" procedure, and was

released from MPD custody just over one hour later, at 10:17 PM that same evening.  *Id.*

Plaintiff initially filed suit against the District of Columbia, the MPD Chief of Police,

Officer William Suter, Officer Krister Suter, and several John Doe officers and supervisors on

February 22, 2008.  Compl., ECF No. [1].  The Amended Complaint was filed September 24,

2008.  Am. Compl., ECF No. [20].  Officer William Suter, the Chief of Police, and the Doe

defendants were subsequently voluntarily dismissed by Plaintiff, leaving only the District of

Columbia and Officer Krister Suter as defendants.  1/12/2009 Order, 2/11/11 Order, & ECF No.

[58] (2/16/11 Notice of Voluntary Dismissal as to Doe Defendants).

## II. LEGAL STANDARD

Defendants style their motion as one for summary judgment pursuant to Federal Rule of

Civil Procedure 56, or in the alternative, a motion to dismiss pursuant to Rule 12(b)(6).[3]  Plaintiff

argues the motion should be treated as one for summary judgment.  Pl.'s Opp'n at 22-24.  With

one exception, the Court agrees.  Defendants moved to dismiss Count VIII, seeking equitable

relief, on the grounds Plaintiff lacks standing.  The thrust of this argument is one for lack of

subject matter jurisdiction pursuant to Rule 12(b)(1).  Therefore the Court shall treat Defendants'

motion as one for summary judgment for all counts except Count VIII, which shall be treated as

a motion under Rule 12(b)(1).

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).

> A party asserting that a fact cannot be or is genuinely disputed must support the
> assertion by:
> (A) citing to particular parts of materials in the record, including depositions,
> documents, electronically stored information, affidavits or declarations, stipulations
> (including those made for purposes of the motion only), admissions, interrogatory
> answers, or other materials); or
> (B) showing that the materials cited do not establish the absence or presence of a
> genuine dispute, or that an adverse party cannot produce admissible evidence to
> support the fact.

Fed. R. Civ. P. 56(c)(1).  "If a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

---

[3] Defendants filed their answers to the Amended Complaint in late 2008.  *See* ECF Nos.
[23] and [27].  Thus the time for filing a Rule 12(b)(6) motion has long since passed.  The Court
presumes Defendants intended to move for judgment on the pleadings pursuant to Rule 12(c) as
to all counts other than Count VIII.

consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e). When

considering a motion for summary judgment, the court may not make credibility determinations

or weigh the evidence; the evidence must be analyzed in the light most favorable to the

nonmoving party, with all justifiable inferences drawn in his favor. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 255 (1986). "If material facts are at issue, or, though undisputed, are

susceptible to divergent inferences, summary judgment is not available." *Moore v. Hartman*,

571 F.3d 62, 66 (D.C. Cir. 2009) (citation omitted).

The mere existence of a factual dispute, by itself, is insufficient to bar summary

judgment. *See Liberty Lobby*, 477 U.S. at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Id.* For a dispute about a material fact to be "genuine," there must be sufficient

admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Id.* The

Court must determine "whether the evidence presents a sufficient disagreement to require

submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."

*Id.* at 251-52. "If the evidence is merely colorable, or is not sufficiently probative, summary

judgment may be granted." *Id.* at 249-50 (internal citations omitted). The adverse party must

"do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Conclusory

assertions offered without any factual basis in the record cannot create a genuine dispute. *See*

*Ass'n of Flight Attendants-CWA v. U.S. Dep't of Transp.*, 564 F.3d 462, 465-66 (D.C. Cir. 2009).

With regards to Plaintiff's claim for equitable relief, in determining whether the Court

has subject matter jurisdiction, the Court may "consider the complaint supplemented by

undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus

the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d

193, 198 (D.C. Cir. 2003) (citations omitted); *see also Jerome Stevens Pharm., Inc. v. FDA*, 402

F.3d 1249, 1253 (D.C. Cir. 2005) ("[T]he district court may consider materials outside the

pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."). "At the

motion to dismiss stage, counseled complaints, as well as pro se complaints, are to be construed

with sufficient liberality to afford all possible inferences favorable to the pleader on allegations

of fact." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1106 (D.C. Cir. 2005). "Although a

court must accept as true all factual allegations contained in the complaint when reviewing a

motion to dismiss pursuant to Rule 12(b)(1), [a] plaintiff['s] factual allegations in the complaint

... will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for

failure to state a claim." *Wright v. Foreign Serv. Grievance Bd.*, 503 F. Supp. 2d 163, 170

(D.D.C. 2007) (internal citations and quotation marks omitted). The plaintiff bears the burden of

proving subject matter jurisdiction by a preponderance of the evidence, *Am. Farm Bureau v.

EPA*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000).

## III. DISCUSSION

### A.    *Claims Conceded By Plaintiff*

In his opposition, Plaintiff agreed to dismiss Count II in its entirety against both

Defendants, and to dismiss the claim for negligent supervision against the District in Count VII.

In responding to Defendants' arguments regarding Count I (42 U.S.C. § 1983), Plaintiff

conceded "Officer Suter should not be held individually liable for the violation of Plaintiff's

Constitutional rights." Pl.'s Opp'n at 24. This apparent concession is bolstered by the fact

Plaintiff fails to counter Defendants' arguments regarding Officer Suter's liability under Section 1983. *See* Pl.'s Opp'n at 24-30. Plaintiff also appears to have abandoned his claim for negligence against the District, apart from the claim for *respondeat superior* which is not the subject of the District's motion for summary judgment. In his opposition, Plaintiff deliberately omits the allegations of failure to investigate and failure to prevent injury in quoting the Amended Complaint. *See* Pl.'s Opp'n at 33 (quoting Am. Compl. ¶ 103). The only specific references to the District of Columbia in the Opposition rely on Plaintiff's Expert Report. The Expert Report however, supports only a claim for failure to supervise, which Plaintiff specifically abandoned. Pl.'s Ex. 8 at 3-4 ("[I]f the supervisors of these officers failed to see that the required reports were made and failed to conduct an investigation into this event, this would be contrary to national and local police standards."). Therefore, the Court shall grant Defendants' motion for summary judgment as to Count I (as to Officer Suter), Count II, Count VII (negligent supervision only), and Count IX (as to the District) as conceded.

B.      *Count I: Section 1983 As To The District Of Columbia*

Count I of the Amended Complaint alleges the District is liable under 42 U.S.C. § 1983 for violations of Plaintiff's constitutional rights to Due Process, freedom from unreasonable search and seizure, freedom from excessive use of force, and equal protection. Am. Compl. ¶ 47. Section 1 of the Civil Rights Act of 1871, Rev. Stat. § 1979, as amended, 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Where, as here, the plaintiff seeks to hold a municipality liable under Section 1983, there is a two part inquiry: first, the plaintiff must establish a predicate constitutional violation, and second, the plaintiff must establish that a "policy or custom"[4] of the municipality caused the constitutional violation. *Brown v. District of Columbia*, 514 F.3d 1279, 1283 (D.C. Cir. 2008). Defendants contend the Plaintiff's claim fails at each level, arguing that (1) Plaintiff has failed to establish an underlying constitutional violation because there are no constitutional claims pending against any individuals defendants; and (2) Plaintiff failed to identify any "policy or custom" of the District that caused the alleged constitutional violation(s). Though the Plaintiff has sufficiently identified a predicate constitutional violation, Plaintiff fails to identify a relevant "policy or custom" for which the District could be held liable.

### 1.    Underlying Constitutional Violation

Defendants devote only a sentence to their argument on the first step of the Section 1983 analysis, arguing "[i]f Officer Suter did not commit a constitutional violation, then there can be no liability against the District." Def.'s Mem. at 8. Defendants' argument, and reliance on *City of Los Angeles v. Heller*, 475 U.S. 796 (1986), is misplaced. *City of Los Angeles* held that a jury verdict in a trial against an individual police officer finding no violation of the plaintiff's constitutional rights was conclusive as to any claims against the city employing that officer. *Id.* at 798-99. The case does not stand for the proposition that the individual officers must be named as defendants in the same suit as the city–or at all–in order for municipal liability to attach. The officers or agents who committed the underlying constitutional violation do not have to be

---

[4] The Court uses the phrase "policy or custom" as shorthand for the full spectrum of municipal actions that may lead to liability under Section 1983.

named in a suit under Section 1983; the municipality is liable so long as the plaintiff proves the underlying constitutional violation.  *See, e.g., Daskalea v. District of Columbia*, 227 F.3d 433, 441-443 (D.C. Cir. 2000) (upholding a jury verdict against the District for violating Section 1983 where the individual prison guards were not named as defendants); *Warren v. District of Columbia*, 353 F.3d 36, 39-40 (D.C. Cir. 2004) (finding the complaint stated a claim for relief under Section 1983 against the District where no individual guards were named as defendants). Elsewhere Defendants concede there remain genuine issues of material fact as to whether the arrest of and use of force on Plaintiff was lawful.  Def.'s Mem. at 13-14.  Thus at the summary judgment stage, Plaintiff has sufficiently established a violation of his constitutional rights as required for the Section 1983 claim against the District.

### 2.    Policy or Custom of the District

The District further argues that Count I of the Amended Complaint should be dismissed because Plaintiff cannot establish a municipal policy or custom that caused the underlying constitutional violations.  Establishing a policy or custom is once again a two-part inquiry: first, the plaintiff must establish the existence of a policy or custom, and second, the plaintiff must show a causal link between the identified policy or custom and the constitutional violation. *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003).  The policy or custom itself must be the "moving force of the constitutional violation."  *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 694 (1978).

Courts have identified a variety of ways that a municipality can adopt a policy or custom sufficient to support liability under Section 1983.  The unifying principle is that a municipality may only be held liable for its own violations of federal law:

> "[W]hile Congress never questioned its power to impose civil liability on municipalities for their own illegal acts, Congress did doubt its constitutional power to impose such liability in order to oblige municipalities to control the conduct of *others*."  We have consistently refused to hold municipalities liable under a theory of *respondeat superior*.

*Bd. of Cnty Comm'rs of Bryan Cnty, Ok. v. Brown*, 520 U.S. 387, 403 (1997) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986)) (internal citations omitted).  There are four basic categories of municipal action Plaintiff may rely on to establish municipal liability: (1) express municipal policy; (2) adoption by municipal policymakers; (3) custom or usage; and (4) deliberate indifference.  *Monell*, 436 U.S. at 690-694.  Plaintiff's opposition purports to identify customs and deliberate indifference on the part of the District as a basis for liability.

In the absence of an express policy, policies and customs for purposes of Section 1983 are significantly easier to define than to prove.  *See Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986).  Although the evidentiary standard is often described as "exacting," *Robinson v. District of Columbia*, 403 F. Supp. 2d 39, 56 (D.D.C. 2005), the measure and type of proof required "is not easy to quantify," *Cox v. District of Columbia*, 821 F. Supp. 1, 13 (D.D.C. 1993).  The plaintiff must "present concentrated, fully packed, precisely delineated scenarios." *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (quotations and citations omitted), *cert. denied*, 489 U.S. 1065 (1989).  Statistics may be relevant, but there are no "numerical standard[s] control[ling] the determination whether incidents of wrongful behavior cumulatively show a pattern amounting to a custom or policy."  *Carter*, 795 F.2d at 124.

a.      Arresting citizens without probable cause.

Plaintiff first argues that the MPD has a "customary practice of arresting citizens without probable cause."  Pl.'s Stmt. ¶ 37; Pl.'s Opp'n at 25 ("[T]he MPD has a long history of making arrests for misdemeanors that are not supported by probable cause.").  To demonstrate this "customary practice," Plaintiff relies on a report issued nearly four years prior to Plaintiff's

arrest, based on data from 1996 to 2000, which concludes that over that time period, the District had higher than average arrests for disorderly conduct.  Pl.'s Ex. 32 (11/19/2003 Citizen Complain Review Board Report: "Disorderly Conduct Arrests Made by Metropolitan Police Department Officers") at 2.  Plaintiff provides no evidence that at the time of his arrest for possession of an open container of alcohol, the District had a higher than average arrest for misdemeanors, or even a study indicating a substantial portion of misdemeanor arrests in the District in 2007 lacked probable cause.  One study, seven years prior to Plaintiff's arrest, does not show a "persistent, pervasive practice, attributable to a course deliberately pursued by official policy-makers, one that caused the deprivation of constitutional rights plaintiffs experienced."  *Carter*, 795 F.2d at 125-26.  Ultimately, Plaintiff does not even attempt to allege causation, likely because the Plaintiff was not arrested for the offense examined in the report on which he relies.  *See* Resp. Stmt. ¶ 2.

b.      Lack of training on how to enforce public drinking laws.

Second, Plaintiff claims MPD officers lacked adequate training "on how to properly enforce the District's [possession of open container of alcohol] and other public drinking laws."  Pl.'s Opp'n at 25-26; Pl.'s Stmt. ¶ 40.  However, the sole piece of evidence relied on by Plaintiff based its conclusion on the inability of MPD officers to identify what is and is not "public property" for purposes of the public drinking laws.  Pl.'s Ex. 33 (8/17/2009 Police Compl. Board Report: "Public Drinking Arrests By MPD Officers on Residential Property") at 1.  Assuming the report had identified some other custom relevant to Plaintiff's claim, Plaintiff ultimately failed to allege this lack of training caused *his* arrest, where, according to Plaintiff, he was not consuming or in possession of any alcohol.  Resp. Stmt. ¶ 2.

c.      Post and forfeit procedure.

Third, Plaintiff claims that the "post and forfeit" procedure through which he was released was found unconstitutional, citing *Huthnance v. District of Columbia*, No. 06-1871,

2011 WL 2836363 (D.D.C. July 19, 2011).  Contrary to Plaintiff's assertion, in *Huthnance*,

Chief Judge Royce C. Lamberth actually granted judgment as a matter of law *in favor* of the

District of Columbia on claims that the post and forfeit procedure violated equal protection or

substantive due process rights.  *Id.* at *16-18.  Chief Judge Lamberth did find there was

sufficient evidence to support the jury verdict finding the District was deliberately indifferent

towards disorderly conduct arrests without probable cause, but that finding was based on more

than just the report which is the only basis for Plaintiff's initial theory.  *Id.* at *10-14 (noting the

plaintiff provided an additional study of disorderly conduct arrests, as well as evidence that the

District failed to take any of the steps suggested in the CCRB report, and lied under oath about

doing so).  Though the report mentioned that the use of the post and forfeit procedure shielded

many disorderly conduct arrests from review (*id.* at *13), there is nothing in *Huthnance* or the

record in this case to suggest that the post and forfeit procedure itself is a "policy or custom" to

which municipal liability may attach.  At best, this might show a policy or custom relevant to

Plaintiff's release from custody, but even if proven would not make the District liable for the

alleged false arrest and excessive use of force that occurred prior to arriving at the police station.

> d.      Customary practice of using excessive force during arrests.

Plaintiff's fourth argument alleges a "customary practice of using excessive force when

arresting District of Columbia citizens."  Pl.'s Stmt. ¶ 38.  Plaintiff initially relies on a 2001

Memorandum of Agreement with the Department of Justice.  Pl.'s Ex. 7.  In January 1999, the

Chief of Police and Mayor for the District of Columbia asked the Department of Justice to

review the MPD's use of force.  *Id.* at 4.  The Department of Justice analyzed every reported use

of force and citizen complaint alleging excessive force from 1994 through early 1999, as well as

the MPD's policies, practices and procedures related to the use of force.  *Id.*  The DOJ further

provided technical assistance to correct deficiencies identified during the course of its

investigation.  Pl.'s Ex. 34 (Ltr from DOJ to the Mayor and Chief of Police enclosing the MOA)

at 1. Since the adoption of the MOA, several courts have considered and rejected using the document as a basis for finding a custom of or deliberate indifference towards excessive use of force by the District. *See, e.g., Robinson v. District of Columbia*, 443 F. Supp. 2d 39, 54-55 (D.D.C. 2005); *Fletcher v. District of Columbia*, No. 01-297, 2005 WL 670676, at *5 (D.D.C. Mar. 22, 2005); *Byrd v. District of Columbia*, 297 F. Supp. 2d 136, 140 (D.D.C. 2003).[5]

In his [68] Motion to Strike Notice of Supplemental Authority, Plaintiff argues he was not relying on the MOA itself to establish the "policy or custom." Pl.'s Mot. to Strike at 4. Rather, Plaintiff argues that the other MOA documents, including the letter from the DOJ, the Nineteenth Quarterly Report, and departmental policies establish the policy or custom. *Id.* Unfortunately for Plaintiff, none of these additional documents, separately or in combination, provide any evidence of a "custom" of excessive use of force, or any deliberate indifference towards the same.

The DOJ letter, attached as Plaintiff's Exhibit 34 is nothing more than a cover letter summarizing the DOJ's findings and enclosing the MOA itself. Therefore, the letter is no more proof of a custom of excessive force than the underlying MOA. The Nineteenth Quarterly Report indicates that as of January 2007, the MPD had not yet met the 95% threshold to show substantial compliance with reporting and investigation procedures for incidents involving the use of force, but fails to provide even anecdotal evidence as to the actual *use* of force by the

---

[5] On September 8, 2011, nearly two and one half months after the motion for summary judgment was fully briefed, Defendants filed a [67] Notice of Supplemental Authority identifying prior cases in which the MOA was rejected as the basis for a "policy or custom" sufficient to support a Section 1983 claim. Plaintiff subsequently moved to strike the Notice. *See* ECF No. [68]. Having issued several relevant decisions, the Court was well aware of the line of cases addressed in the Notice. Additionally, Plaintiff used his motion to clarify the scope of his opposition, and thus cannot be said to have been prejudiced by Defendants' "second reply." The Court therefore denies Plaintiff's motion to strike.

MPD.  *See* Pl.'s Ex. 35 (1/29/2007 Nineteenth Quarterly Report of the Independent Monitor for the Metropolitan Police Department ) at 2 (noting the substantive areas of review for the quarter included (1) review of audits and development of the auditing program; (2) non-Force Investigation Team use of force and misconduct investigations; (3) community outreach and citizen complaint programs; and (4) baton in-service training); Pl.'s Ex. 36 (Appendix C to Nineteenth Quarterly Report) at 7.  Second, the fact that the Quarterly Report exists, and was compiled with substantial interaction and cooperation with the MPD reflects the fact that the MPD is aware of and working to resolve monitoring issues, and not deliberately indifferent to them.  *See also Byrd*, 297 F. Supp. 2d at 140 (noting " the MOA does not provide any evidence of specific instances of the District's failure to discipline, and if anything, it demonstrates not deliberate indifference, but rather, an effort to improve its practices and procedures relating to the investigation and discipline of police misconduct").  In fact, the Nineteenth Quarterly Report specifically noted the quality of the MPD's training for officers regarding the type of force that Plaintiff alleges caused his injury–the use of police batons.  Pl.'s Ex. 35 at 5; *see also* Full Nineteenth Quarterly Report at 122 (finding the MPD is in substantial compliance with ¶¶ 121.b and 122 relating to the development and implementation of a use of force training curriculum).[6]  In the end, the report is simply insufficient to establish liability under Section 1983 because it fails to show a *pervasive* pattern of excessive use of force, even if the MPD's investigation practices are faulty .  *See Robinson*, 403 F. Supp. 2d at 56; *cf. Carter*, 795 F.2d at 122-25 (finding no municipal policy where plaintiff provided anecdotal evidence of other incidents of

---

[6] Though Plaintiff attaches only the Executive Summary (Pl.'s Ex. 35) and Appendix C (Pl.'s Ex. 36) of the Quarterly Report to its Opposition, the full report is available at http://www.policemonitor.org/070129report.pdf.

excessive use of force, statistical evidence regarding the treatment of excessive use of force complaints, and officials were unaware of pending civil rights complaints).

In response to the Defendants' Statement of Facts (but not in his memorandum), Plaintiff cites to several MPD General Orders to establish the custom of using excessive force.  Pl.'s Resp. Stmt. ¶ 11.  None of these General Orders support Plaintiff's claim.  General Order 502.01 (Pl.'s Ex. 22) addresses how to properly transport prisoners in order to "reduce the attempt or successful escape of a prisoner from custody."  *Id.* at 1.  Though the Order does discuss how to properly handcuff prisoners for transport, *id.* at 3-4, Plaintiff has not alleged excessive use of force from the way in which he was handcuffed.  General Order 101.9 (Pl.'s Ex. 28), superficially relates to this action as it concerns "Duties and Responsibilities of Sworn Officials," but substantively it lacks any apparent connection to any alleged custom or policy. Likewise, General Order 901.01 (Pl.'s Ex. 30) is irrelevant as it relates only to firearms, which are not at issue in this case.  General Order 901.07 (Pl.'s Ex. 25) undermines Plaintiff's argument, as it outlines specific guidelines as to when and what type of force is appropriate.  *See also* Pl.'s Ex. 27 (General Order 201.26) at Section D.7.  This would tend to show that the relevant Officer was acting in violation of District policy in allegedly breaking Plaintiff's leg. Absent evidence that such violations are endemic, and that the District was aware but indifferent to the violations, there is no basis on which to hold the District liable for the acts of the individual officers.

The only evidence of *actual* use of excessive force come from Plaintiff's reference to the "Incident Case Files" for Officers Suter, Leslie, and Bauserman.  Plaintiff's Exhibits 19 through 21 are printouts of "Case Search Results" showing various "incidents" involving the three

Officers, ranging from "MPD Accident" to "Citizen Complaint," and "Court No-Show."

However, Plaintiff fails to explain how or from where the printouts were obtained, or what "Use

of Force," and "Citizen Complaint" refer to.  General Order 901.07 defines "use of force" as

"any physical contact used to effect, influence or persuade an individual to comply with an order

from an officer."  Pl.'s Ex. 25 at Section III.D.  The Order further requires MPD officers to

complete incident report forms for all "use of force incidents," allegations of excessive use of

force, and "whenever a member draws and points a firearm at or in the direction of another

person."  *Id.* at Section VI.1.  There is nothing in the record, other than Plaintiff's bare assertion,

to suggest that the "Use of Force," or "Citizen Complaints" referenced in the search results for

the relevant Officers involved allegations of excessive use of force as opposed to just the use of

force.  Even if the Court assumed each incident involved credible allegations of excessive use of

force, such conduct on the part of three officers, given the dearth of other reliable evidence, is

insufficient to show deliberate indifference on the part of the District towards excessive use of

force from failing to train MPD officers.

> e.      Deliberate indifference to need for medical attention.

Plaintiff's fifth and final attempt to identify a policy or custom is likewise to no avail.

Plaintiff alleges that the MPD officers in question were deliberately indifferent to Plaintiff's

medical needs in denying his purported request for medical care.  In the Amended Complaint,

the Plaintiff did not even plead the denial of medical care as a constitutional violation in Count I,

and the Court is not willing to allow Plaintiff to newly plead that claim via his opposition.  *See*

*Arbitraje Casa de Cambio, S.A. de C.V. v. U.S. Postal Serv.*, 297 F. Supp. 2d 165, 170 (D.D.C.

2003).  Were the Court to reach the substance of this claim, on its face this claim fails because it

at best shows only deliberate indifference on the part of the *officers towards Plaintiff*, not the
*District towards a systemic issue.*  As the court explains in *Baker*, deliberate indifference on the
part of individual officers towards a plaintiff's medical condition may establish the predicate
constitutional violation, but the plaintiff must also show the District itself was deliberately
indifferent to the risk that not addressing a certain issue will result in constitutional violations.
*See Baker*, 326 F.3d at 1306-07.  The Plaintiff did not even attempt the second stage of that
analysis in this case.  In fact, Plaintiff undermines his claim of deliberate indifference on the part
of the District by alleging the officers' actions were in violation of the MPD's stated policy.
Pl.'s Opp'n at 28.  Absent more, this summary judgment record shows that the alleged denial of
medical care to Plaintiff would have involved isolated misconduct by these officers alone, not
some systemic problem within the Department.  Finally, having failed to identify any deliberate
indifference towards requests for medical care within the MPD, Plaintiff did not even attempt to
allege causation between that custom and his constitutional injury.  Without a policy or custom
on which to base municipal liability for Plaintiff's asserted constitutional violations, much less
show causation, the Court grants summary judgment in favor of the District on Count I.

     C.     *Count III: False Arrest And False Imprisonment As To Officer Suter*

     Count III seeks relief for false arrest and false imprisonment, asserted against both
Defendants.  There is "no real difference as a practical matter between false arrest and false
imprisonment."  *Shaw v. May Dep't Stores Co.,* 268 A.2d 607, 609 n. 2 (D.C. 1970) (citations
omitted).  In the District of Columbia, false arrest "is defined as the unlawful detention of a
person without a warrant or for any length of time whereby he is deprived of his personal liberty
or freedom of locomotion; it may be caused by actual force, or by fear of force, or even by

17

words." *Tocker v. Great Atl. & Pac. Tea Co.*, 190 A.2d 822, 824 (D.C. 1963).  Officer Suter

moved for summary judgment on Count III on the basis that Officer Suter was not the "arresting

officer" in this case.

Plaintiff does not directly respond to Defendants' arguments on this claim in his

memorandum, and only in the Response to Defendants' Statement does the Plaintiff deny

Defendants' assertion that Officer Suter was not the arresting officer and that Officer Suter was

not responsible for handcuffing Plaintiff.  Resp. Stmt. ¶¶ 5-7.  Plaintiff argues that summary

judgment is not warranted for two reasons: (1) Officer Suter was listed as the "arresting officer"

on the Collateral/Bond Receipt; and (2) that Plaintiff was "under arrest at the scene by all of the

officers present."  Resp. Stmt. ¶ 6.  With regards to the first argument, the Court notes that the

Collateral/Bond receipt lists Officer Suter as the "arresting/issuing officer."  Plaintiff provides no

testimony, or even argument, that Officer Suter could not have been listed merely for issuing the

forfeiture form.  Furthermore, it appears the form was completed by a "D. Paige," not Officer

Suter, and thus it would be hearsay at best to call Officer Suter the arresting officer solely on the

basis of this form.  Plaintiff himself identified Officer Leslie as the Officer who placed him in

handcuffs (Hunter Dep. at 26:18-9), and Officer Leslie is identified as the arresting officer on the

Police Report (Pl.'s Ex. 10).  When interviewed, none of the Officers identified Officer Suter as

the officer responsible for handcuffing Plaintiff.  *See* Pl.'s Ex. 13 (Statement of Officer Leslie,

indicating Officer Chaplin handcuffed Plaintiff); Pl.'s Ex. 15 (Statement of Officer Chaplin

stating he handcuffed Plaintiff); Hunter Dep. at 26:18-27:9 (Identifying Officer Leslie as the

officer who handcuffed Plaintiff).  Thus the only basis on which Officer Suter might be held

liable for false arrest would be under some form of secondary liability.

18

It is important to note that Plaintiff did not plead any form of secondary liability for false arrest in the Amended Complaint.  Moreover, at one point in the opposition, the Plaintiff specifically says he "identifies the officer who handcuffed him as the arresting Officer."  Pl.'s Resp. Stmt. ¶ 5.  Nevertheless, even assuming the Plaintiff could pursue such a claim, Plaintiff failed to put forth sufficient evidence to defeat summary judgment.  Not every officer at the scene of an arrest is an "arresting officer."  In *Scott v. District of Columbia*, 101 F.3d 748 (D.C. Cir. 1996), several police officers arrived on the scene where the plaintiff had hit several parked cars.  One lieutenant directed two of the officers to take the plaintiff to the MPD's Traffic Division.  *Id.* at 751-52.  Plaintiff admitted that he was not under arrest until he attempted to leave the police cruiser, and was placed in handcuffs.  *Id.* at 754.  Thus, only the two officers that had restrained plaintiff by handcuffing him and placing him back in the police cruiser could be liable for false arrest.  *Id.*  The first officer who arrived at the scene could not be considered the arresting officer.  *Id.*  Hunter might have a claim against Officer Suter if Officer Suter had instructed Officer Leslie to handcuff Plaintiff or Officer Chaplin to restrain Plaintiff on the ground.  *But see Brown v. City of Huntsville, Ala*, 608 F.3d 724, 737 (11th Cir. 2010) (granting officer qualified immunity despite having instructed his fellow officer to arrest the plaintiff, because the defendant lacked authority to order the other officer to arrest plaintiff and was otherwise occupied at the scene when the actual arrest took place).  Before the Court, however, there is no evidence in the record to show that Officer Suter "procured, instigated, or directed [Plaintiff's] arrest."  *Alvey v. United Air Lines, Inc.*, 494 F.2d 1031, 1033 (D.C. Cir. 1974).  Ultimately Plaintiff has not identified any factual support in the record to prove Officer Suter was aware Plaintiff was arrested without probable cause, that Officer Suter caused his arrest, or

that Officer Suter had the ability to "undo" the arrest once Plaintiff was handcuffed. In other words, the record only supports holding the Officer who actually handcuffed Plaintiff liable for false arrest. Thus the Court shall grant summary judgment in favor of Officer Suter on Count III.

> **D.**    *Count IV: Assault And Battery As To Officer Suter*

Count IV of the Amended Complaint alleges assault and battery in violation of District of Columbia Code § 5-123.02. To recover on a claim of assault in the District of Columbia, the plaintiff must show "intentional and unlawful attempt or threat . . . to do physical harm," and for battery, an "intentional act that causes harmful or offensive bodily contact." *District of Columbia v. Chinn*, 839 A.2d 701, 705-06 (D.C. 2003) (quoting *Holder v. District of Columbia*, 700 A.2d 738, 741 (D.C. 1997)). Officer Suter seeks summary judgment on Count IV because Plaintiff identified Officer Chaplin as responsible for breaking his leg, and does not allege Officer Suter came into any physical contact with the Plaintiff.

Plaintiff's opposition does not respond to Defendants' argument, though in the Response to Defendants' Statement, the Plaintiff denies Defendants' assertion that Officer Suter had no physical contact with the Plaintiff. Resp. Stmt. ¶ 9. On the basis of the record before the Court, Plaintiff has failed to establish a genuine issue of material fact as to whether Officer Suter is liable for assault and/or battery. As for assault, there is no allegation or evidence in the record indicating that Officer Suter ever threatened Plaintiff with physical harm. In terms of battery, there is no evidence in the record to indicate Officer Suter came into physical contact with Plaintiff. Plaintiff identified Officer Leslie as responsible for handcuffing him, and Officer Chaplin as the person who allegedly forced Plaintiff to the ground and injured Plaintiff's leg. Hunter Dep. at 26:18-9, 32:13-6.

In his Response Statement, Plaintiff contends Officer Suter's physical contact with Plaintiff is still at issue, but none of the arguments are persuasive. First, Plaintiff complains about Defendants' citation to Plaintiff's deposition testimony. However, the excerpts provided by both Plaintiff and Defendants include Plaintiff identifying Officer Leslie as the officer who handcuffed Plaintiff, and Plaintiff does not identify any portion of his testimony that alleges Officer Suter touched or threatened to touch him. To the contrary, at one point Plaintiff claims Officer Chaplin "was the only officer that had any physical contact with me." Hunter Dep. at 32:13-33:6. Second, Plaintiff argues that Officer Suter "had the opportunity" to "prevent the use of excessive force." However, Plaintiff failed to plead any form of secondary liability in the Amended Complaint, and cannot amend his pleadings in the opposition. *See* Am. Compl. ¶¶ 67-74. Moreover, Plaintiff elsewhere claims that three other Officers, including Officer Suter were rushing toward's Plaintiff's then-fiancee when his leg was injured. Pl.'s Opp'n at 3. Officer Suter cannot be held liable for assault and battery for his mere presence on the scene, particularly when Plaintiff alleges Officer Suter was otherwise engaged when the event occurred and could not have stopped it. *See Halberstam v. Welch*, 705 F.2d 472, 481 (D.C. Cir. 1983). While Officer Suter was present, Plaintiff has failed to raise any genuine issue of material fact that Officer Suter in any way physically touched Plaintiff so as to sustain a claim for battery. Therefore, the Court shall grant summary judgment in favor of Officer Suter on Count IV.

      E.     *Counts V: Negligent Infliction Of Emotional Distress As To Officer Suter*

Count V charges Defendant Suter with negligent infliction of emotional distress. Under the laws of the District of Columbia, for such claims the plaintiff must show (1) the plaintiff was in the zone of physical danger; (2) the zone was created by the defendant's negligence; (3)

plaintiff feared for his own safety; and (4) the resulting emotional distress was serious and verifiable. *Jones v. Howard Univ., Inc.*, 589 A.2d 419, 424 (D.C. 1991); *Williams v. Baker*, 572 A.2d 1062, 1067–68 (D.C. 1990) (en banc) (rejecting "impact" or "physical injury" requirement Plaintiff relies on in his opposition in favor of the "zone of danger" approach). Defendant argues that Plaintiff merely re-alleged the intentional torts couched in the language of "duty" without more, and that damages for this claim would be duplicative of the intentional tort claims.

Adding the word "duty" and reiterating the allegations of intentional conduct are insufficient to plead negligence based claims. *See Cotton v. District of Columbia*, 541 F. Supp. 2d 195, 209 (D.D.C. 2008). "[I]t is impossible to negligently commit assault and/or battery as the states of mind are separate and incompatible." *Chinn*, 839 A.2d at 708. After alleging Defendant Suter and others had a "duty to act reasonably and with due care in their interactions with plaintiff," the Amended Complaint merely alleges that the officers' conduct was extreme and outrageous "when they *forcibly arrested* plaintiff, *falsely imprisoned* plaintiff, used *excessive force* to effectuate the same, and *refused medical care* to the plaintiff," causing him injury. Am. Compl. ¶¶ 76-77 (emphasis added). The first three acts merely repeat the intentional tort claims without identifying any separate duty that might form the basis for a negligence claim. *See Cotton*, 541 F. Supp. 2d at 209 (dismissing negligence and negligent infliction of emotional distress claims based on "forcibly arresting, falsely imprisoning the plaintiff, and using excessive force" as identical to those for plaintiff's claim of intentional infliction of emotional distress). Moreover, the Court has already held that there is no genuine issue of material fact as to whether Officer Suter was the "arresting officer," or came into physical contact with the Plaintiff in granting summary judgment in favor of Officer Suter on

Counts III and IV.  *See supra*, at Parts C, D.  Thus even apart from the issue of duplication, there

is insufficient evidence in the record to support a claim of negligent infliction of emotional

distress based on any alleged false arrest, false imprisonment, and excessive use of force on the

part of Officer Suter.  The refusal of medical care claim deserves closer inspection, but

ultimately is inadequate.

Taking Plaintiff's and his expert's assertions as true—that the Officers had a duty to

provide medical care to Plaintiff upon request (Pl.'s Ex. 8 at 3), that Plaintiff in fact requested

medical care, and that request was denied—Plaintiff still falls far short of pleading, much less

proving on summary judgment, a claim for negligent infliction of emotional distress on this

basis.  First, Plaintiff fails to allege or show, that Officer Suter's purported negligence in not

providing Plaintiff medical care placed him in any physical danger.  There are no allegations or

documents in the record to support the idea that the injuries Plaintiff suffered at the scene of the

arrest were in any way exacerbated by the delay in receiving medical treatment that might be

attributable to Officer Suter.  Nor does Plaintiff demonstrate that he feared for his own safety

during the time he was denied care.  *See Brown v. Argenbright Sec., Inc.*, 782 A.2d 752, 759, n.9

(D.C. 2001) (holding neither the employee nor the employer could be held liable for negligent

infliction of emotional distress where plaintiff never alleged fear for her own safety and the

underlying tort was for assault).  Finally, the Plaintiff has not alleged or proven that his

emotional distress was actually caused by Officer Suter's negligence—that is, not obtaining

medical care for the Plaintiff—rather than the underlying physical injury caused prior to being

taken to the police station.  Plaintiff cannot use the alleged negligent denial of medical care as a

basis for recovering under the guise of negligent infliction of emotional distress what are really

injuries caused by a previously occurring intentional tort. Therefore, the Court shall grant summary judgment in favor of Officer Suter on Count V.

F.      Count VI: Intentional Infliction Of Emotional Distress As To Officer Suter

Count VI alleges intentional infliction of emotional distress against Officer Suter for having "forcibly arrested plaintiff, falsely imprisoned plaintiff, used excessive force to effectuate the same, and refused to provide medical care to the plaintiff." Am. Compl. ¶ 82. A claim for intentional infliction of emotional distress requires the plaintiff to show "(1) extreme and outrageous conduct on the part of the defendant which (2) either intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kassem v. Wash. Hosp. Center*, 513 F.3d 251, 255 (D.C. Cir. 2008) (quoting *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)). Officer Suter contends Count VI should be dismissed because it is simply derivative of the intentional torts pled in the complaint.

Plaintiff asserts that Officer Suter had the opportunity to prevent the use of excessive force, and knew or should have known his actions violated Plaintiff's constitutional rights. For the reasons stated above, Plaintiff has failed to provide evidence sufficient to demonstrate a genuine issue of material fact that Officer Suter is liable for false arrest or assault/battery. This is fatal to Plaintiff's claim for intentional infliction of emotional distress, because, as Defendant argues, this claim is based (almost) entirely on the purported false arrest and battery. In other words, Plaintiff has failed to allege any other "extreme and outrageous" conduct on the part of Officer Suter sufficient to form the basis for the alleged claim. While Plaintiff's allegations concerning the denial of medical care are not duplicative of the intentional torts, as explained in the context of Plaintiff's claim for negligent infliction of emotional distress, Plaintiff does not

24

allege, much less establish, that the alleged denial of medical care (as opposed to the false arrest and excessive use of force) caused Plaintiff's alleged distress.  *See* Pl.'s Stmt. ¶ 26 (alleging emotional injuries from "the Officers' conduct"); *id.* at ¶ 33 (alleging severe mental injuries "as a result of the officers' use of excessive force").  With no allegation that the denial of care itself caused Plaintiff any mental distress (and assuming Plaintiff could even show Officer Suter was responsible for that denial), there is no basis for Plaintiff's intentional infliction of emotional distress claim and the Court shall grant summary judgment in favor of Officer Suter on Count VII.

G.      *Count VIII: Equitable Relief As To The District*

Count VIII of the Amended Complaint seeks equitable relief in the form of (a) "[a] policy and procedure to be implemented against discrimination"; (b) "[t]raining for the named Defendants in the use of excessive force; (c) "Equal Employment Opportunity Training for the named Defendants"; (d) "[s]upervisory training for the John Doe Supervisors": and (e) "for such other and further relief as the Court deems just and proper."  "Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."  *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02 (1983) (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).  The plaintiff must show he "has sustained or is immediately in danger of sustaining some direct injury," as a result of the challenged conduct, and the threat must be both "real and immediate," not "conjectural" or "hypothetical."  *Id.*  The District contends that the Plaintiff lacks standing because he cannot show that he is likely to be subject to the same conduct from Officer Suter in the future.

Plaintiff responds that (1) equitable relief is a form of relief, not a claim that can be dismissed*;*(2) the Court cannot dismiss a request for equitable relief before the Plaintiff requests it; and (3) "a logical remedy to prevent such occurrences in the future is to request appropriate and effective training for the individuals involved." Pl.'s Opp'n at 31-32. The Court finds Plaintiff's first two arguments curious in light of the fact Plaintiff expressly requested equitable relief in the Amended Complaint, even going so far as to plead it as a distinct claim, not just part of the prayer for relief. In any event, Plaintiff's assertions are incorrect. That fact that a substantive claim has not yet gone to trial and been adjudicated in Plaintiff's favor—thus triggering a "request" for equitable relief as Plaintiff would frame it—does not deprive the Court of the ability to dismiss the claim for lack of subject matter jurisdiction. To the contrary, Plaintiff's standing is a pre-requisite to the Court evaluating a motion for summary judgment on that claim, and if the Plaintiff lacks standing, the claim must be dismissed for want of jurisdiction. *Taylor v. FDIC*, 132 F.3d 753, 767-78 (D.C. Cir. 1997).

Though Plaintiff plainly alleges he suffered some injury from the Officers' conduct and the District's purported custom or policy, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). As in this case, the plaintiffs in *O'Shea* challenged purported discriminatory enforcement of criminal laws. However, the Supreme Court found the plaintiffs could not pursue injunctive relief because there is no case or controversy where "[t]he most that could be said for plaintiffs' standing was 'that if [plaintiffs] proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the

discriminatory practices that petitioners are alleged to have followed.'" *Lyons*, 461 U.S. at 102

(quoting *O'Shea*, 414 U.S. at 497); *see also Chang v. United States*, 738 F. Supp. 2d 83, 89-92

(D.D.C. 2010) (granting summary judgment to defendant on claim for equitable relief seeking

revision of MPD policies regarding choke holds for lack of standing).   Plaintiff's invocation of

equitable relief is based upon "what one of a small, unnamed minority of policemen might do to

[him] in the future because of that unknown policeman's perception of departmental" policies,

and is therefore insufficient to establish subject matter jurisdiction. *Rizzo v. Goode*, 423 U.S.

362, 372 (1976).

       H.      *Count IX: Negligence As To Officer Suter*

     Plaintiff's final claim alleges common law negligence against Officer Suter.  When

negligence claims involve excessive use of force by police officers, "negligence must be

distinctly pled and based upon at least one factual scenario that presents an aspect of negligence

apart from the use of excessive force itself and violative of a distinct standard of care." *Chinn*,

839 A.2d at 705.  As with Count V, Defendants argue that Plaintiff simply re-alleges the

intentional tort and constitutional claims under the guise of negligence, and that damages for

such claims would be duplicative of the intentional tort claims.

     Plaintiff contends his "negligence claim is a distinct claim apart from his other claims,"

citing the Amended Complaint's allegations that the Defendants "had the duty to act reasonably

and with due care in their interactions with plaintiff," "each defendant breached their duty of

care when plaintiff was falsely arrested, imprisoned, and his constitutional rights were violated,"

and "as a direct and proximate result of the action and/or inactions of each defendant," Plaintiff

suffered various injuries.  Pl.'s Opp'n at 33 (citing Am. Compl. ¶¶ 101-104).  However, for the

individual Officers, this amounts to nothing more than a duty not to falsely arrest, imprison, or violate Plaintiff's "constitutional rights." Am. Compl. ¶ 102. Plaintiff characterizes the potential expert testimony as going to show the Officers "were negligent and used an amount of force that was excessive under the circumstances," which is the exact basis for Plaintiff's assault and battery claim. *See* Pl.'s Opp'n at 34. Once again, Plaintiff has merely re-plead his intentional tort violations without identifying "at least one factual scenario" apart from false arrest and excessive use of force that violates a distinct standard of care. *Chinn*, 839 A.2d at 705.

Plaintiff's reliance on *Reaves-Bey v. Karr*, 840 A.2d 701, 703 (D.C. 2004), is misplaced. In *Reaves-Bey*, a courier was assaulted by another courier after their employer arranged a "rendezvous" to hand off a package. *Id.* In reversing summary judgment for defendants on the issue of the relevant statute of limitations, the court found plaintiff had alleged negligence based on "an independent duty; namely, that the [defendant] breached a duty of care toward her safety by negligently setting up a rendezvous with a person who presented a known danger to her." *Id.* By contrast, Plaintiff merely alleges that the Officers were negligent in committing the underlying battery and false arrest, but does not identify any separate duty. Nor does *Marusa v. District of Columbia*, 484 F.2d 828 (D.C. Cir. 1973) support Plaintiff's position. *Marusa* involved only the question of whether common law negligent supervision and failure to train claims could be brought against the District's Chief of Police and District itself. *Id.* at 830. That case did not, as is the case here, involve allegations of both intentional torts and negligence against the same defendant. The officer in *Marusa* was never even served with process. *Id.* Thus while *Marusa* may support the notion that it is theoretically possible to plead a claim of

negligence against the District, it does not save Plaintiff's negligence claim against Officer Suter.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to produce evidence sufficient for a reasonable jury to conclude that Officer Suter is liable for any of the claims asserted in the Amended Complaint.  The Court also finds that Plaintiff failed to show a policy or custom on which to base municipal liability for the alleged constitutional violations.  Finally, Plaintiff did not show he is likely to face the same conduct from the Officers in the future, and therefore lacks standing to pursue a claim for equitable relief.  Accordingly the Court shall GRANT Defendants' [61] Motion for Partial Summary Judgment and/or Motion to Dismiss. The Court grants Defendants' motion for summary judgment as to Counts I, II, III (Officer Suter only), IV (Officer Suter only), V, VI, VII (negligent supervision only), and IX.  The Court further dismisses Count VIII for lack of subject matter jurisdiction.  Counts III and IV as to the District of Columbia, and Count VII to the extent it asserts a claim for *respondeat superior* remain as Defendants did not move for summary judgment or to dismiss these claims.  Plaintiff's [68] Motion to Strike Notice of Supplemental Authority is also DENIED.  An appropriate Order accompanies this Memorandum Opinion.

Date: November 15, 2011

_____/s/_____
**COLLEEN KOLLAR-KOTELLY**
United States District Judge